**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
CHARLES D. AUSTIN
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
MDD_CDAChambers@mdd.uscourts.gov

March 28, 2025

LETTER TO ALL COUNSEL OF RECORD

Re:  *Antwoin W. v. Leland Dudek, Acting Commissioner, Social Security Administration*[1]
     Civil No. 24-0495-CDA

Dear Counsel:

On February 20, 2024, Plaintiff Antwoin W. ("Plaintiff") petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") final decision to deny her claim for Social Security benefits. ECF 1. This case was then referred to me with the parties' consent. *See* 28 U.S.C. § 636; D. Md. Loc. R. 301. I have considered the record in this case (ECF 8) and the parties' filings (ECFs 11, 13-14). I find that no hearing is necessary. *See* D. Md. Loc. R. 105.6. The Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, this Court will AFFIRM the SSA's decision. This letter explains why.

## I.   PROCEDURAL BACKGROUND

On June 2, 2021, Plaintiff filed a Title XVI application for Supplemental Security Income ("SSI") benefits, alleging a disability onset date of March 19, 2019. Tr. 370-80. Plaintiff's claims were denied initially and on reconsideration. Tr. 190-97, 199-201. Three hearings were held before an Administrative Law Judge ("ALJ") on May 3, 2022, Tr. 48-60, July 13, 2022, Tr. 61-87, and January 25, 2023, Tr. 88-135. Following these hearings, on February 2, 2023, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act[2] during the relevant time frame. Tr. 7-38. On December 20, 2023, the Appeals Council denied Plaintiff's request for review, Tr. 1-6, so the ALJ's decision constitutes the final, reviewable decision of the SSA, *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Plaintiff filed this case against Martin O'Malley, the Commissioner of Social Security, on February 20, 2024. ECF 1. Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Accordingly, Commissioner Dudek has been substituted as this case's Defendant pursuant to Federal Rule of Civil Procedure 25(d). *See* Fed. R. Civ. P. 25(d).

[2] 42 U.S.C. §§ 301 et seq.

## II.     THE ALJ'S DECISION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The ALJ is required to evaluate a claimant's disability determination using a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920. "Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (citation omitted) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)).

At step one, the ALJ determined that Plaintiff had "not engaged in substantial gainful activity since May 6, 2021, the application date[.]" Tr. 13. At step two, the ALJ found that Plaintiff suffered from the following severe impairments:

> degenerative disc disease of the lumbar spine with right sided sciatica and radiculopathy, degenerative disc disease and degenerative joint disease of the cervical spine, degenerative disc disease of the thoracic spine, clonus of the bilateral ankles, obstructive sleep apnea, severe obesity, diabetes with peripheral neuropathy in the lower extremities, anxiety disorder/generalized anxiety disorder with panic attacks, major depressive disorder, adjustment disorder with mixed anxiety and depressed mood, bipolar disorder, personality disorder unspecified with avoidant features, unspecified neurodevelopmental disorder, post-traumatic stress disorder (PTSD) and insomnia.

*Id.* The ALJ further found as non-severe impairments myopia, astigmatism, hypertension, mallet finger, fatigue unspecified type, muscle spasm in thigh, acute right ankle pain, leg length discrepancy, onychomycosis right fifth toenail, unspecified osteoarthrosis of unspecified site, tinea unguium, and other injury of unspecified body region sequela. *Id.*

At step three, the ALJ determined that Plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" *Id.* at 14. Despite these impairments, the ALJ determined that, Plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 416.967(b) except the claimant is limited to occupations that require no more than occasional postural maneuvers, such as stooping, or kneeling, crouching, or crawling and climbing on ramps and stairs but must avoid occupations that require climbing on ladders, ropes and scaffolds. The claimant is limited to occupations that require no more than frequent balancing. The claimant must avoid occupations that require pushing or pulling with the lower extremities to include the operation of pedals. The claimant must avoid

> concentrated prolonged exposure to cold temperature extremes or vibration. The claimant is limited to occupations which do not require exposure to hazards such as dangerous machinery and unprotected heights. The claimant must avoid exposure to occupations that present noise levels above level 3 (which is moderate). The claimant is limited to occupations that require the claimant to understand, remember and carry out simple instructions, and make simple work-related decisions. The claimant is limited to work with no fast-paced production requirement, such as work in a high-speed production line setting. The claimant is limited to occupations that require the claimant to deal with infrequent changes in a routine work setting. The claimant is limited to occupations which require no more than occasional interaction with supervisors, coworkers and members of the general public. The claimant is limited to occupations which require no prolonged reading for content and comprehension, or complex mathematical calculations such as cashier or teller work.

*Id.* at 17. The ALJ determined that Plaintiff could not perform past relevant work but could perform other jobs that existed in significant numbers in the national economy. *Id.* at 29-30. Therefore, the ALJ concluded that Plaintiff has not been disabled "since May 6, 2021, the date the application was filed[.]" *Id.* at 31.

### III.    LEGAL STANDARD

The scope of the Court's review is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the [ALJ] . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla . . . and somewhat less than a preponderance." *Id.* In conducting the "substantial evidence" inquiry, this Court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained their findings and rationale in crediting the evidence. *See, e.g., Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the [ALJ].").

### IV.    ANALYSIS

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to properly evaluate the medical opinions from Dr. Jennifer Betts, Dr. Leah Bielski, Dr. Matthew Berger, and Mr. Michael Bohr. ECF 11, at 4-15. Plaintiff further argues that the RFC is not supported by substantial evidence because the ALJ failed to (i) build an accurate and logical bridge between the evidence and RFC; (ii) perform a function-by-function assessment of Plaintiff's work-related abilities; (iii) explain how Plaintiff would remain on task for 95% of the workday; and (iv) evaluate the cumulative effect of Plaintiff's impairments. *Id.* at 18-29.

*Antwoin W. v. Dudek*
Civil No. 24-0495-CDA
March 28, 2025
Page 4

Defendant counters that the RFC is supported by substantial evidence because the ALJ conducted a thorough review of the record and properly analyzed the medical opinions. ECF 13, at 8-12, 14-18. None of Plaintiff's arguments prevail.

> a. *The ALJ properly evaluated the medical opinions of Dr. Betts, Dr. Bielski, Dr. Berger, and Mr. Bohr.*

The Court finds that the ALJ properly evaluated the medical opinions of Dr. Betts, Dr. Bielski, Dr. Berger, and Mr. Bohr. An ALJ "must follow certain procedures when assessing the weight to which medical opinions are entitled." *Adrianna S. v. Comm'r of Soc. Sec.*, No. SAG-20-3136, 2022 WL 112034, at *1 (D. Md. Jan. 12, 2022) (citing 20 C.F.R. §§ 404.1520c, 416.920c). The ALJ must "articulate . . . how persuasive [the ALJ] finds each medical opinion." *Id.* (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)). Because "[s]upportability and consistency are the most important factors when considering the persuasiveness of medical opinions," an ALJ must "explain how [he] considered [these] factors." *Id.* Supportability and consistency "must be considered independently[.]" *Carlos F.*, 2023 WL 3293086, at *3; *see also Duane H. v. Kijakazi*, No. JMC-20-3673, 2021 WL 8314949, at *3 (D. Md. Dec. 29, 2021) (recognizing that to consider supportability "in conjunction with" consistency "would conflate the nuances of those factors").

"Supportability generally refers to 'the objective medical evidence and supporting explanations provided by a medical source.'" *Id.* (quoting 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). "Strictly speaking, 'supportability' concerns an opinion's reference to diagnostic techniques, data collection procedures/analysis, and other objective medical evidence." *Carlos F. v. Kijakazi*, No. 22-2049-BAH, 2023 WL 3293086, at *3 (D. Md. May 5, 2023) (internal quotation marks and citation omitted); *see also Mary W. v. Comm'r of Soc. Sec.*, No. 20-5523, 2022 WL 202764, at *10 (S.D. Ohio Jan. 24, 2022) ("For the ALJ to have adequately discussed the supportability of . . . opinions, the ALJ needed to evaluate what the [physicians] said they based their opinions on—not simply how their opinions compared to the record evidence as a whole, which only goes to . . . consistency[.]"). Supportability is not considered independently when the ALJ only analyzes "the consistency of an opinion with other opinions from the . . . rest of the record[.]" *Timeka M. v. Kijakazi*, No. 22-3194-BAH, 2023 WL 5804645, at *3 (D. Md. Sept. 6, 2023). Instead, the ALJ "must assess the relevance of 'the objective medical evidence and supporting explanations presented by a medical source' to the ultimate finding advanced by that medical expert." *Id.* (quoting 20 C.F.R. § 404.1520c(c)(1)).

"Consistency" is the extent to which the medical opinion is consistent with evidence from other medical and nonmedical sources in the claim. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The more consistent the opinion is with the other evidence, the more persuasive the opinion is. *Ibid.* Consistency is an "outward facing inquiry," *Valentine v. O'Malley*, No. 24-0141-DCC-TER, 2024 WL 4445255, at *4 (D.S.C. Sept. 12, 2024), that requires the ALJ "to evaluate a medical source's opinion in comparison to other evidence in the record," *Rosa M. v. Kijakazi*, No. 22-4494-BHH-MHC, 2023 WL 9101308, at *4 (D.S.C. Dec. 8, 2023). In assessing consistency, the ALJ must consider whether the opinion is "consistent with evidence from sources *other* than [the source of the opinion]." *Marie T. v. O'Malley*, No. 23-1320-CDA, 2024 WL 2114811, at *3 (D. Md. May 10, 2024) (emphasis in original).

First, the ALJ properly evaluated the medical opinion of Dr. Betts. Dr. Betts conducted a consultative mental status examination. Tr. 21. The ALJ first analyzed supportability. The ALJ found that "a moderate limitation with simple instructions and work-related decisions and a marked limitation to complex instructions and work-related decisions . . . are not supported by [other] findings [in the opinion], which indicate that . . . [Plaintiff] did not have problems with orientation, thought process and speech and was able to perform some tasks in memory and attention testing, as well as have a fair presentation, adequate self-care and interacted appropriately." Tr. 22. The ALJ also observed that the opinion "was a one-time examination and [Dr. Betts] in part relied on subjective reports from [Plaintiff] when forming the opinion." *Id.* The ALJ then pivoted to consistency, finding Dr. Betts' opinion unpersuasive because it was inconsistent "with the conservative level of mental health treatment and the clinical findings from the treatment records[.]" *Id.* Moreover, the citation in the ALJ's consistency analysis refers to documents from Dr. Berger and Mr. Bohr's treatment records, not Dr. Betts. *See id.* Such citations reflect an appropriate comparison to other medical sources in the record.

Second, the ALJ properly evaluated the medical opinion of Dr. Bielski. Dr. Bielski provided a consultative intelligence evaluation. *Id.* The ALJ again articulated their supportability determination. The ALJ found that "a moderate limitation with complex instructions and work-related decisions and interacting with others [is] persuasive because they are supported by the deficits identified upon intelligence testing and . . . consistent with the deficits noted in . . . the [opinion]." Tr. 23. The ALJ also observed that "a marked limitation [to] respond[ing] appropriately to usually work situations and [] changes in a routine work setting . . . was not persuasive because it is not supported by the overall finding of moderate deficit upon testing." Tr. 22-23. The ALJ analyzed consistency, too. The ALJ noted that a moderate limitation was "supported by . . . the symptoms associated with [Plaintiff]'s anxiety." Tr. 23. The ALJ found Dr. Bielski's opinion partially persuasive despite a marked limitation being "not well supported [by] the totality of the evidence" and "not consistent with the conservative level of mental health treatment[ and] clinical findings[.]" *Id.* Moreover, reflecting the source of the comparisons, the citation in the ALJ's analysis refers to documents from Dr. Berger and Mr. Bohr's treatment records, not Dr. Bielski. *See id.*

Third, the ALJ properly evaluated the medical opinion of Dr. Berger and Mr. Bohr. Dr. Berger and Mr. Bohr offered a "Test of Variables of Attention" form.[3] *Id.* Again, a proper supportability analysis is clear. The ALJ found that "a marked . . . limitation in [Plaintiff's] ability to respond appropriately to usual work situations and [] changes in a routine work setting . . . is inconsistent with the clinical findings from the records of [Dr. Berger and Mr. Bohr and] . . . the level of treatment provided by [Dr. Berger and Mr. Bohr.]" Tr. 23-24. The ALJ also analyzed consistency as required. The ALJ found that the form's suggestion that Plaintiff had a mood disorder "is generally consistent with the multiple mental health diagnoses of record[.]" *Id.*

---

[3] The form contains a finding that Plaintiff had a "marked limitation . . . in his ability to respond appropriately to usual work situations and to changes in a routine work setting" and showed signs of "a mood disorder." Tr. 1082.

> *b. The ALJ built an accurate and logical bridge between the evidence and RFC.*

A claimant's RFC represents "the most [they] can still do despite [their] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). As noted in *Dowling*, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (alteration in original) (citation omitted). Thus, an ALJ must identify evidence that supports their conclusions and build an accurate and logical bridge from that evidence to their conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). The RFC includes eleven conclusions, finding that Plaintiff:

> (1) "is limited to . . . occasional postural maneuvers, such as stooping, or kneeling, crouching, or crawling and climbing on ramps and stairs but must avoid . . . climbing on ladders, ropes and scaffolds;"
>
> (2) cannot partake in "no more than frequent balancing;"
>
> (3) "must avoid . . . pushing or pulling with the lower extremities to include the operation of pedals;"
>
> (4) "must avoid concentrated prolonged exposure to cold temperature extremes or vibration;"
>
> (5) "cannot be . . . expos[ed] to hazards such as dangerous machinery and unprotected heights;"
>
> (6) "must avoid . . . noise levels above level 3 (which is moderate);"
>
> (7) "can only . . . understand, remember and carry out simple instructions[] and make simple work-related decisions;"
>
> (8) "is limited . . . no fast-paced production requirement, such as work in a high-speed production line setting;"
>
> (9) "cannot . . . deal with infrequent changes in a routine work setting;"
>
> (10) "cannot partake in . . . no more than occasional interaction with supervisors, coworkers and members of the general public;" and
>
> (11) "is limited to . . . no prolonged reading for content and comprehension, or complex mathematical calculations such as cashier or teller work."

Tr. 17. Moreover, the ALJ thoroughly summarized Plaintiff's medical history across eight pages, including relevant medical records, subjective testimony, and medical opinions. Tr. 18-25.

Here, each conclusion in the RFC is accompanied by a narrative discussion describing the evidence that supports it. The ALJ incorporated limitations (1) and (5) from the medical opinions of Dr. James Butcofski and Dr. Gene Whang and limitations (7), (8), (9), and (10) from the opinions of Dr. Bielski, Dr. Michael Lace, Dr. Anthony Galdieri, and Dr. Virginia Martin. Tr. 25, 27-29; *see Vanesta H. v. Kijakazi*, No. 23-594-CDA, 2023 WL 8716943, at *4 (D. Md. Dec. 18, 2023) (finding that the ALJ's incorporation in the RFC of limitations from medical opinions created an accurate and logical bridge between the evidence and the RFC). As to limitation (2), the ALJ opined that "the clinical findings of full to only slight reductions in strength in [Plaintiff's] lower extremities, normal EMG testing of [Plaintiff's] lower extremities and normal diabetic foot examination findings and full upper extremity strength and intact hand dexterity [do] not support a reduction to . . . below frequent balancing." Tr. 26. The ALJ further found that limitation (3) accounted for Plaintiff's "objective clinical abnormalities and subjective reports related to [his] lower extremities[.]" *Id.* The ALJ also stated that limitations (4) and (6) "avoid conditions that may aggravate [Plaintiff's] symptoms, such as exposure to cold, vibration, and noise[.]" *Id.* Finally, the ALJ concluded that limitation (11) addressed Plaintiff's "cognitive deficits and reports of special education and problems with reading and math[.]" Tr. 26, 28-29.

> c. *The ALJ adequately performed a function-by-function assessment of Plaintiff's ability to sit, stand, walk, or lift.*

The Court finds that the ALJ adequately performed a function-by-function assessment of Plaintiff's ability to sit, stand, walk, or lift. In determining the RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). Pursuant to Social Security Ruling ("SSR") 96-8P, a [FBF] assessment must include an evaluation of a claimant's ability to perform the physical functions listed in 20 C.F.R. § 416.945(b), including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions" that "may reduce [a claimant's] ability to do . . . work." 20 C.F.R. § 416.945(b); *see* SSR 96-8P, 1996 WL 374184, at *5 (S.S.A. July 2, 1996). Only after such an analysis may an ALJ express RFC in terms of the exertional level of work of which the ALJ believes the claimant to be capable. *See Dowling*, 986 F.3d at 387; *see also Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (holding that a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam))).

A function-by-function assessment is adequate where the ALJ assigns persuasive value to a medical opinion opining on a claimant's ability to sit, stand, walk, or lift and then incorporates that opinion's limitations in the RFC. *See Sizemore v. Berryhill,* 878 F.3d 72, 80-81 (4th Cir. 2017) (holding that an ALJ adequately supported limitations in the RFC by assigning persuasive value to the opinions of doctors who addressed the limitations in detail); *see, e.g.*, *Audrey L. v. O'Malley*, No. 23-2502-CDA, 2024 WL 3905668, at *4-5 (D. Md. Aug. 22, 2024) (finding a function-by-function assessment proper where the ALJ incorporated an opinion's limitations in

the RFC); *Vanesta H.*, 2023 WL 8716943, at *3 (finding that the claimant could perform light work because the ALJ assigned persuasive value to opinions opining that the claimant could perform light work); *Janell W. v. Kijakazi*, No. BAH-22-2339, 2023 WL 4456848, at *3 (D. Md. July 11, 2023) (finding that the ALJ accounted for the claimant's ability to lift, carry, push, or pull by assigning persuasive value to medical opinions that explicitly addressed such functions).

Here, the ALJ's function-by-function assessment is adequate. Dr. Butcofski opined that Plaintiff "could perform . . . light exertional work with occasional postural activities except for no climbing of ladders, ropes or scaffolds and a need to avoid concentrated exposure to vibration and hazards." Tr. 27. Dr. Whang opined that Plaintiff "could perform . . . light exertional work with frequent climbing ramps and stairs and balancing, occasional stooping, kneeling, crouching and crawling and no climbing of ladders, ropes and scaffolds with a need to avoid even moderate exposure to hazards." *Id.* Like in *Audrey L.*, *Vanesta H.*, and *Janell W.*, the ALJ assigned persuasive value to both opinions and then incorporated in the RFC limitations from each opinion. *Id.*; *see* Tr. 17.

    *d. The ALJ did not err by failing to explain Plaintiff's ability to stay on task.*

The Court finds that the ALJ did not err by failing to explain Plaintiff's ability to stay on task. "[A]n ALJ is not required to determine a percentage of time off-task, and can simply consider whether a claimant has the ability to sustain work over an eight-hour workday." *Kane v. Comm'r, Soc. Sec. Admin.*, No. SAG-17-1252, 2018 WL 2739961, at *2 n.2 (D. Md. May 14, 2018); *see also Adrienne P. v. Kijakazi,* No. BPG-22-358, 2023 WL 2407394, at *3 (D. Md. Jan. 6, 2023) ("[A]n RFC determination implicitly contains a finding that [a] plaintiff is able to work an eight-hour work day[.]"). Moreover, "an ALJ is free to accept or reject restrictions included in hypothetical questions" posed to a vocational expert. *France v. Apfel*, 87 F. Supp. 2d 484, 490 (D. Md. 2000).

A narrative discussion regarding a claimant's ability to stay on task is required if the ALJ includes a specific off-task limitation in the RFC. *See April K. v. Kijakazi*, No. 21-1538-BAH, 2022 WL 2793048, at *5 (D. Md. July 15, 2022) (finding it unnecessary for the ALJ to narratively discuss the plaintiff's ability to stay on task because "the ALJ did not make a finding that [the p]laintiff would be off task for a particular period of time"). Moreover, despite VE testimony regarding a hypothetical employer's tolerance for off-task time, the Court has afforded deference to an ALJ's decision not to include an off-task limitation in the RFC or otherwise address a claimant's ability to stay on task. *See, e.g., Audrey L.*, 2024 WL 3905668, at *4 ("[A]n ALJ does not err by failing to consider a [VE]'s testimony regarding time off-task."); *Kaylee J. v. Kijakazi*, No. 22-2653-BAH, 2023 WL 4027514, at *3 (D. Md. June 15, 2023) (affirming the ALJ's decision not to include an off-task limitation in the RFC despite VE testimony "that being off task for more than nine percent of a workday would preclude work"); *Stacey F. v. Kijakazi*, No. 22-2362-BAH, 2023 WL 3932239, at *3 (D. Md. June 9, 2023) (affirming the ALJ's decision not to include an off-task limitation in the RFC despite VE testimony that a hypothetical employer would not tolerate more than five percent time off task); *April K.*, 2022 WL 2793048, at *5 (affirming the

ALJ's decision not to include an off-task limitation in the RFC despite VE testimony that more than ten percent time off task would be work-preclusive).

Here, the ALJ did not err by failing to explain Plaintiff's ability to stay on task. Because the ALJ did not include a specific off-task limitation in the RFC, the ALJ was not required to narratively discuss Plaintiff's ability to stay on task. As in *Audrey L.*, *Kaylee J.*, *Stacey F.*, and *April K.*, the Court's conclusion is not altered by VE testimony that "anything beyond 5% [off task] would be" work-preclusive. Tr. 131.

> e. *The ALJ properly evaluated the cumulative effect of Plaintiff's impairments.*

An ALJ is required to "consider the combined effect of [a claimant]'s severe and nonsevere impairments in his RFC discussion[.]" *Anthony M. v. Comm'r, Soc. Sec. Admin.*, No. SAG-19-651, 2020 WL 434581, at *3 (D. Md. Jan. 28, 2020); *see also Britt v. Saul*, 860 Fed. App'x 256, 261 (4th Cir. 2021) ("When a claimant has several impairments, including non-severe impairments, the [ALJ] must consider their cumulative effect in making a disability determination."); *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 866 (4th Cir. 2014) ("[A]n ALJ must adequately explain his or her evaluation of the combined effects of a claimant's impairments." (internal quotation marks and citation omitted)).

Courts in the Fourth Circuit look at "the [ALJ's] decision as a whole" to determine whether an ALJ adequately explains their evaluation of the combined effects of a claimant's impairments. *Brown v. Astrue*, No. 10-1584-RBH, 2012 WL 3716792, at *6 (D.S.C. Aug. 28, 2012); *see also Williams v. Berryhill*, No. 17-16, 2017 WL 4083574, at *10 (M.D.N.C. Sept. 14, 2017) (finding that "the ALJ's decision, as a whole, adequately demonstrates that he considered [the p]laintiff's impairments in combination"); *Paris v. Colvin*, No. 12-0596, 2014 WL 534057, at *12 (W.D. Va. Feb. 10, 2014) (observing that adequate explanation exists where "it is discernible from the ALJ's decision that he or she . . . considered a claimant's impairments in combination" (internal quotation marks and citation omitted)). An ALJ's explanation cannot be "founded on a fragmentized analysis of those impairments." *Brown*, 2012 WL 3716792, at *6; *see also Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (The ALJ "must consider the combined effect of a claimant's impairments and not fragmentize them."). Even if an ALJ failed to consider the combined effects of a claimant's impairments or the ALJ's explanation is fragmentized, the claimant must show that the ALJ's decision "could have been different had he done an adequate combined effect analysis of his multiple impairments." *Brown*, 2012 WL 3716792, at *6; *see also Williams*, 2017 WL 4083574, at *11 (requiring the claimant "to show how a more complete analysis would have resulted in a more restrictive RFC or a different outcome in the case"); *Gregory C. v. Soc. Sec. Admin.*, No. 18-0069-JMC, 2018 WL 6344205, at *4 (D. Md. Oct. 17, 2018) (requiring the claimant to show how an ALJ's failure to consider the combined effects "equates to prejudicial error with respect to his denial of benefits").

Looking at the ALJ's decision as a whole, the ALJ adequately explained their evaluation of the combined effects of Plaintiff's impairments. To be sure, the ALJ considered the combined effects of Plaintiff's severe and non-severe impairments several times in their decision:

> (1) While all of these conditions are non-severe, the undersigned considered all of the claimant's severe and non-severe impairments in determining the claimant's residual functional capacity, and appropriate exertional, postural, reach, environmental and mental limitations have been included to address the claimant's severe and non-severe impairments.
>
> (2) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]
>
> (3) [T]he undersigned has considered the effects of obesity on the exertional ability, postural activities, range of motion, manipulative ability, environmental limitations and mental limitations of the claimant.
>
> (4) The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, 12.06, 12.08, 12.11, and 12.15.
>
> (5) The undersigned added additional and more comprehensive limitations, including more restrictive postural limitations, greater environmental limitations and specific limitation to the use of the lower extremities, to address the combined effects of the claimant's multiple impairments and the subjective reports to the extent they are reasonably supported by the objective medical evidence.
>
> (6) [T]he record shows the claimant is capable of doing a range of light work on a sustained and continuous basis despite the limitations resulting from his impairments.

Tr. 13-15, 27, 29.  Jurists in this District have deemed adequate ALJ explanations that are far less detailed.  *See, e.g., Milline V. v. Kijakazi*, No. 22-2094-BAH, 2023 WL 5299956, at *8 (D. Md. Aug. 17, 2023) (finding adequate an ALJ explanation that the claimant "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments"); *Tina P. v. Kijakazi*, No. TJS-21-708, 2022 WL 714373, at *2 (D. Md. Mar. 10, 2022) (same); *Gregory C.*, 2018 WL 6344205, at *4 (same).  Even if the ALJ fragmented their analysis at times, Plaintiff fails to show that the ALJ's decision "could have been different had [they] done an adequate combined effect analysis of his multiple impairments[,]" *Brown*, 2012 WL 3716792, at *6, or "would have resulted in a more restrictive RFC[,]" *Williams*, 2017 WL 4083574, at *11.  Rather, Plaintiff broadly argues that the ALJ failed to evaluate the cumulative effect of Plaintiff's impairments.  ECF 11, at 26-29.

*   *   *

The ALJ's reliance on substantial evidence and a robust discussion of Plaintiff's record in assessing the RFC permits meaningful review for the reasons explained above.  A reasonable mind would accept the evidence provided as sufficient to support the ALJ's conclusion.  *See Laws*, 368

F.2d at 642. That being the case, Plaintiff's disagreements with the ALJ's conclusions are not enough to reverse the Commissioner's decision. Accordingly, remand is unwarranted.

## V. **CONCLUSION**

For the reasons set forth herein, the SSA's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. A separate implementing Order follows.

Sincerely,

/s/

Charles D. Austin
United States Magistrate Judge